

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JHK:JPL/BWB
F.# 2010R00068

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 22, 2010

**SUBMITTED UNDER SEAL**

The Honorable Raymond J. Dearie
United States District Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

> Re: United States v. John Doe
>     Criminal Docket No. 10-028 (RJD)

Dear Chief Judge Dearie:

The government writes to inform the Court that the parties in the above-captioned case expect the defendant Naqib Jaji to plead guilty to a single-count indictment charging conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512(k). A copy of the cooperation agreement will be provided to the Court under separate cover.

For the reasons set forth below, the government respectfully moves the Court to close the courtroom for the guilty plea proceeding, seal the transcript of that proceeding, approve the use of the name "John Doe" in place of the defendant's true name in the case's caption, and seal this letter and any order the Court enters in connection with this motion. The government further respectfully requests that: (1) a hearing on this motion be scheduled for January 22, 2010 at 9:30 am, a date and time that were pre-cleared by Your Honor's courtroom deputy; (2) the Court's public calendar for the date of the hearing reflect that the government has filed a motion for courtroom closure, along with the time and place of the hearing; and (3) the Court's calendar for the date of the hearing and the guilty plea proceeding not include the defendant's name, but rather use the caption United States v. John Doe. Finally, the government respectfully requests that, after holding a public hearing, the Court enter the enclosed proposed order regarding courtroom closure and sealing. The government anticipates that it will receive the required approvals from the Department of

Justice prior to the hearing.

I. <u>Background</u>

As set forth in the government's September 24, 2009 detention memorandum filed in <u>United States v. Najibullah Zazi</u>, 09-CR-663 (RJD), Najibullah Zazi ("Zazi") and others conspired to manufacture and use explosive devices and acquired chemical components for these devices. On September 23, 2009, a grand jury in the Eastern District of New York indicted Najibullah Zazi for conspiring to use weapons of mass destruction, specifically explosive bombs, in violation of 18 U.S.C. § 2332a(a)(2). <u>See</u> Indictment, 09-CR-663 (RJD). In September 2009, the defendant in the above-captioned case, Naqib Jaji, testified, pursuant to a subpoena, before a grand jury sitting in the Eastern District of New York, in connection with this investigation.

On January 11, 2010 and January 12, 2010, Jaji was interviewed by the FBI. After being advised of his <u>Miranda</u> rights, which he stated that he understood and agreed to waive, Jaji spoke with the agents. Jaji stated that in the summer of 2008, he learned that Zazi was planning to travel to Pakistan to fight United States troops in Afghanistan. Jaji told the agents that after Zazi returned to the United States from Pakistan, he lived with Jaji in Colorado for several months. In September 2009, Jaji learned that federal law enforcement was investigating Zazi's activities. As a result, Jaji agreed with others to destroy evidence of Zazi's bomb-making activities, including bomb-making chemicals, a mask and protective goggles. In addition, Jaji admitted that, prior to traveling to New York to testify before the grand jury, Jaji agreed with another person not to testify truthfully before the grand jury. Jaji admitted to lying during his grand jury testimony.

With the assistance of court-appointed counsel, Jaji began meeting with the United States Attorney's Office. During these meetings, Jaji admitted to his criminal conduct and agreed, in principle, to plead guilty to a single-count indictment charging conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512(k) pursuant to a cooperation agreement.

Any public disclosure of the defendant's federal criminal case and cooperation with government authorities would undermine the significant value of the defendant's cooperation in ongoing grand jury investigations of serious and violent crimes. Specifically, revelation of the defendant's criminal case would likely result in changes of behavior by targets of the grand jury investigation, including individuals associated with Najibullah

2

Zazi. In addition, if the defendant's cooperation were revealed, targets of the investigation may destroy evidence which links them to the defendant or attempt to intimidate witnesses who can corroborate the defendant's information. Any such action would substantially impair ongoing grand jury investigations of serious and violent crimes.

In addition, any public disclosure of the defendant's federal criminal case and cooperation could endanger the defendant and his family. The defendant is cooperating against individuals who are responsible for serious and violent crimes. These individuals include persons affiliated with al-Qaeda, a designated foreign terrorist organization. A public guilty plea proceeding would place the defendant and his family at risk of violent retribution or intimidation.

Finally, any public disclosure of the defendant's federal criminal case and cooperation would eliminate the possibility of using the defendant to pro-actively gather evidence of serious and violent crimes. The possible utility of the defendant's cooperation in this regard depends, in part, on secrecy.

II. Analysis

In United States v. Alcantara, 396 F.3d 189 (2d Cir. 2005), the Second Circuit set forth the procedures to be followed before a district court may close a proceeding. The court explained as follows:

> [A] motion for courtroom closure should be docketed in the public docket files maintained in the court clerk's office. The motion itself may be filed under seal, when appropriate, by leave of court, but the publicly maintained docket entries should reflect the fact that the motion was filed, the fact that the motion and any supporting or opposing papers were filed under seal, the time and place of any hearing on the motion, the occurrence of such hearing, the disposition of the motion, and the fact of courtroom closure, whether ordered upon motion of a party or by the Court sua sponte. Entries on the docket should be made promptly, normally on the day the pertinent event occurs.

Id. at 200 (citations omitted). This letter constitutes the motion contemplated in <u>Alcantara</u>.

The Second Circuit in <u>Alcantara</u> also reiterated that "[b]efore excluding the public from [plea and sentencing] proceedings, district courts must make findings on the record demonstrating the need for the exclusion." <u>Id.</u> at 192. It observed that "[t]he power to close a courtroom where proceedings are being conducted during the course of a criminal prosecution . . . is one to be very seldom exercised, and even then only with the greatest caution, under urgent circumstances and for very clear and apparent reasons." <u>Id.</u> at 192 (quoting <u>United States v. Cojab</u>, 996 F.2d 1401, 1405 (2d Cir. 1993)).

The Second Circuit has identified "four steps that a district court must follow in deciding a motion for closure." <u>United States v. John Doe</u>, 63 F.3d 121, 128 (2d Cir. 1995). First, the district court must identify, through specific findings, whether there exists "a substantial probability of prejudice to a compelling interest of the defendant, government or third party." <u>Id.</u> The Circuit has provided specific, illustrative examples of such compelling interests, including the defendant's right to a fair trial, the privacy interests of the defendant, victims or other persons, "the integrity of significant government activities entitled to confidentiality, such as ongoing undercover investigations or detection devices," and danger to persons or property, <u>id.</u>, as well as protection of the secrecy of grand jury matters and an ongoing criminal investigation. <u>United States v. Haller</u>, 837 F.2d 84, 87 (2d Cir. 1988) (upholding sealing portion of plea agreement to protect investigation). With respect to danger to persons, the Second Circuit has held that evidence of a direct threat, though powerful evidence of danger, is <u>not</u> "a strict condition precedent to a district court's granting of a closure motion." <u>Doe</u>, 63 F.3d at 130. Moreover, according to the Second Circuit, "[t]he problem of retaliatory acts against those producing adverse testimony is especially acute in the context of criminal organizations . . . ." <u>Id.</u> With respect to the integrity of significant government activity, such as grand jury and criminal investigations, the Second Circuit has highlighted the concern that public proceedings and documents exposing a cooperating witness could alert "potential targets of the investigation," cause the witness "to be reluctant about testifying," and expose innocent subjects of the investigation to "public embarrassment." <u>Haller</u>, 837 F.2d at 88.

Second, where a substantial probability of prejudice is found, the district court must consider whether reasonable

4

alternatives to closure can protect the compelling interest. Doe, 63 F.3d at 128. Third, the district court must decide whether the prejudice to the compelling interest overrides the qualified First Amendment right of access. Id. Finally, if the determination is made that closure is warranted, the Court must devise a closure order that is narrowly tailored to protect the compelling interest. Id. It should be noted that the law does not require that closure be "the least restrictive means available to protect the endangered interest." Id. (citing Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 510 (1984)).

Here, as is evident from the information set forth above, a public guilty plea proceeding would result in the substantial probability of prejudice to compelling interests of the government, as well as the defendant. In particular, because the defendant is interested in cooperating in ongoing terrorism investigations, including open grand jury investigations of individuals associated with Najibullah Zazi, a public guilty plea proceeding would prejudice a compelling interest of the government in the integrity of ongoing grand jury investigations of serious and violent crimes. In addition, because the defendant is cooperating against individuals involved in dangerous and violent crime, a public guilty plea proceeding would place the defendant's own safety and the safety of his family at risk. As noted above, the Second Circuit has expressly identified danger to persons and property and integrity of criminal investigations as compelling interests that can warrant closure of the courtroom and sealing of transcripts. Doe, 63 F.3d at 128 (citing United States v. Raffoul, 826 F.2d 218, 226 (3d Cir. 1987)); In re Herald Co., 734 F.2d 93, 100 (2d Cir. 1984); Haller, 837 F.2d at 87. Where the investigation relates to a matter of national security, as this one does, the compelling nature of the government's interest is enhanced. Moreover, under the circumstances, the defendant has a strong interest in ensuring that any cooperation that he provides is confidential and effective.

Based on the information set forth above, it is also apparent that no reasonable alternatives to closure of the courtroom exist that would adequately protect the compelling interests of the government and the defendant. The government has a compelling interest in securing the defendant's guilty plea and cooperation as soon as possible to advance ongoing grand jury investigations into serious and violent crimes. The defendant must plead guilty to the indictment in a courtroom.

Finally, the government submits that the prejudice to

5

compelling interests embodied in the danger to the defendant and his family and the threat to the integrity of the government's investigation far outweigh the qualified First Amendment right of the public and the media to access the guilty plea proceedings. The government's investigation concerns matters of national security, and secrecy is necessary to enable the information provided by the defendant to be utilized, as well as to gather additional evidence in terrorism investigations. Moreover, by ordering that the government disclose the transcript of the proceedings as required by <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), <u>Giglio v. United States</u>, 405 U.S. 150 (1972), 18 U.S.C. § 3500 and/or Rule 16 of the Federal Rules of Criminal Procedure and requiring the parties to move to unseal the transcript once the likely prejudice to their compelling interests no longer outweighs the qualified right to access, the Court can narrowly tailor the closure.

Accordingly, the government respectfully requests that, after holding a public hearing, the Court enter the proposed order, which contains findings reflecting: (a) the substantial probability that a public guilty plea proceeding would prejudice the compelling interests identified above; (b) the lack of reasonable alternatives to courtroom closure; (c) that the prejudice to the compelling interests overrides the qualified right of the public and the media to access the guilty plea proceedings.

III. <u>Conclusion</u>

The government respectfully requests that the Court file this letter under seal and hold a public hearing on the motion to close the courtroom for the guilty plea proceeding. In order to comply with <u>Alcantara</u>'s notice requirements, the government requests that: (1) the Court's public calendar for the date of the hearing reflect that the government has filed a motion for courtroom closure, along with the time and place of the hearing; (2) the Court's calendar for the dates of the hearing and the guilty plea proceeding not include the defendant's name, but rather reflect the docket sheet entry of

<u>United States v. John Doe</u>.  Finally, the government respectfully requests that, after holding a public hearing, the Court enter the enclosed proposed order regarding courtroom closure and sealing.

   Counsel for the defendant, Donald DuBoulay, Esq., joins in this letter and all motions and applications contained herein.

             Respectfully submitted,

             BENTON J. CAMPBELL
             United States Attorney

By: *[signature]*
    Berit W. Berger
    Jeffrey H. Knox
    James P. Loonam
    Assistant U.S. Attorneys
    (718) 254-6134

Encl.

cc: Donald DuBoulay, Esq. (w/ encl.)